# EXHIBIT B

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into by **Luis Cabrera**, on behalf of himself, his heirs, executors, administrators, trustees, attorneys and assigns (the "Releasor"), Defendant **Brian Richard Lucas,** individually ("Lucas") and Defendant **Lucas Designs, Inc.** (the "Company") and its present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, board members, partners, associates, trustees, administrators, managers, member-managers, members, employees, stockholders, representatives, agents, heirs, assigns, insurers and attorneys, in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these entities, and (b) the family members, heirs, attorneys, executors, administrators, estates, assignees, legal representatives of every kind and description, and insurers, including insurers' current and former agents of each of the foregoing persons and entities (these persons and entities being collectively referred to as the "Released Parties") (the "Releasor" and the "Released Parties" are together referred to as the "Parties"), on this ____ day of _____, 2017.

**WHEREAS**, the Releasor joined a civil action against Lucas and the Company in the United States District Court for the District of South Carolina, Beaufort Division captioned *Orlando Ra'palo and Luis Galeana, On Behalf of Themselves and All Others Similarly Situated v. Lucas Designs, Inc. and Brian Richard Lucas, individually*, C.A. No. 9:17-cv-00710-DCN asserting a claim for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") (the "Complaint"); and

**WHEREAS,** the Releasor asserts that he worked for Defendants for a period of six months; and

**WHEREAS**, the Releasor has agreed to dismiss any and all claims that were asserted or could have been asserted in the Complaint against the Released Parties with prejudice, without costs, without contribution, and without any admission of liability; and

**WHEREAS**, the Released Parties have denied and continue to deny the allegations contained in the Complaint and have denied and continue to deny that they have violated any law, rule, statute or regulation, or committed any wrong whatsoever; and

**WHEREAS**, the Parties desire to settle fully and finally a bona fide dispute regarding unpaid overtime wages with each other in accordance with the terms and conditions set forth herein including, without limitation, claims raised or which could have been raised in the Complaint or which relate to the Complaint; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and other good and valuable consideration, and to avoid the inconvenience and expense of litigation, and without any admission of fault or liability on the part of the Parties;

**IT IS HEREBY AGREED** by and between the Parties as follows:

1

1. **Consideration.**

    (a) <u>Settlement Payment</u>. In consideration for the Releasor's execution of and compliance with the terms of the Agreement, including, but not limited to, the release and waiver of all claims against the Released Parties and the settlement and dismissal with prejudice of the Complaint (including any claims that were or could have been asserted in the Complaint) as set forth more fully below, the settlement amount shall be allocated as follows:

    (i) One check made payable to Releasor in the amount of **NINE HUNDRED THIRTEEN AND NO/100 DOLLARS** ($913.00) which is allocated for back wage payments for all unpaid overtime hours Releasor asserts that he worked for Defendants, is subject to standard payroll tax withholding, and shall be reflected on a W-2 form for tax reporting purposes.

    (ii) One check made payable to Releasor in the amount of **FOUR HUNDRED FIFTY-SIX AND 50/100 DOLLARS** ($456.50) which is allocated for one-half of the liquidated damages (based on the bona fide dispute as to the applicability of Defendants' good-faith defense under 29 U.S.C. § 260 and agreed to by the Parties), is not subject to payroll taxes, and will be reported on a 1099 form.

    (iii) Defendants will pay to Mullaney Law, LLC a total of **TEN THOUSAND AND NO/100 DOLLARS** ($10,000) for all fees and costs incurred in its representation of the four Named Plaintiffs and Additional Plaintiffs (identified in the Joint Motion to Approve Settlement), with one-fourth of this fee being allocated for the representation of each of the four Plaintiffs who are named in, or consented to join, this matter.

    Theses payments constitutes the "Settlement Payment" for all of the Releasor's claims or potential claims against the Released Parties including, but not limited to, those concerning or relating in any way to the allegations raised in the Complaint and/or which could have been raised in the Complaint. The payments shall be issued within thirty (30) days after Defendants' counsel receives the signed Agreement.

    (b) <u>Releases</u>. The Releasor agrees to fully and irrevocably release the Released Parties from any and all claims, causes of action, demands, obligations, liabilities, rights, and damages that were asserted or that could have been asserted in the Complaint and/or which relate, directly or indirectly, to such claims, causes of action, demands, obligations, liabilities, rights, and damages.

    (c) <u>Indemnification</u>. This settlement is based upon a good faith determination of the Parties to resolve a bona fide dispute. The Parties have attempted to resolve this matter in compliance with both state and federal law, and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of past or future medical treatment to Medicare in contravention of 42 U.S.C. § 1395(b). The Releasor will indemnify, defend and hold the Released Parties and their insurer(s) harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental

2

entity, seeks damages including multiple damages from the Released Parties relating to payment by such governmental entity, or anyone acting on behalf of such entity, relating to Releasor's alleged injuries or the Complaint, Releasor will defend and indemnify the Released Parties, and hold the Released Parties and their insurer(s) harmless from any and all such damages, claims, liens, penalties, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.  The Releasor further agrees to defend, indemnify, and hold harmless the Released Parties from any cause of action, including, but not limited to one arising from any alleged loss of Medicare or Social Security benefits, including a recovery for past, present, and future liens, including attorney's fees. The Releasor also agrees to waive his rights to bring any possible such future actions against the Released Parties or their insurer(s) under the Medicare Secondary Payer Statute.

    2.    <u>Acknowledgments and Full Discharge of Liabilities</u>.

    (a)    The Releasor acknowledges and agrees that the Settlement Payment and other benefits provided pursuant to this Agreement: (i) are in full discharge of any and all liabilities and obligations of the Released Parties to the Releasor, monetarily or otherwise, including, but not limited to, all alleged unpaid back wages claimed by Releasor, and (ii) constitute full and final satisfaction and relief for any claim the Releasor has, had, or could have brought against the Released Parties in the Complaint.

    (b)    The Releasor acknowledges and agrees that the Settlement Payment provided pursuant to this Agreement is subject to his executing this Agreement, and his compliance with his obligations hereunder;

    (c)    The Releasor represents that other than the Complaint, he has not filed any complaints, claims, or actions against the Released Parties with any state, federal or local agency, or court and that he will not do so at any time hereafter concerning the claims made in the Complaint.  The Releasor further agrees that if any agency or court assumes jurisdiction of any other complaint, claim, or action against the Released Parties on his behalf, he will direct that agency or court to withdraw from or dismiss with prejudice the matter as it relates to the Releasor;

    (d)    The Releasor agrees that he is solely responsible for the payment and reporting of any federal, state, and/or local taxes on the settlement amount allocated for liquidated damages and agrees to waive any such claims against the Released Parties for any liability for the reporting or payment of applicable taxes.  The Released Parties have not made, and do not make, any representations as to the tax consequences of any payment hereunder. The taxability of the settlement monies shall not affect the validity of this Agreement;

    (e)    The Releasor understands and agrees that unless: (i) the Releasor executes this Agreement and (ii) the Complaint is dismissed with prejudice, that the settlement described herein is a nullity, this Agreement is rendered void and unenforceable, and any offer by the Released Parties to the Releasor is automatically withdrawn.

3. **Non-Admission**.  This Agreement is not intended, and shall not be construed, as an admission of a violation of any federal, state or local law, ordinance, or regulation. This Agreement is not intended, and shall not be construed, as an admission that the Released Parties committed any wrong whatsoever, and the Released Parties expressly deny any wrongdoing. The Releasor does not purport and will not claim to be a prevailing party to any degree or extent in a subsequent proceeding related to the Complaint, nor will this Agreement or its terms be admissible in any proceeding in a court of competent jurisdiction other than in a proceeding for breach of the terms contained herein.

4. **Full and General Release of Claims**.

(a) In General.    In exchange for the Released Parties' promises contained in this Agreement, including the payments and benefits provided to the Releasor in Paragraph 1 above, the Releasor agrees, irrevocably and unconditionally, to release, forever discharge, and acquit the Released Parties individually or jointly, and severally, from any and all actions, causes of action, suits, claims, demands, appeals, charges, debts, injuries of any kind, claims for sums of money, controversies, agreements, damages, judgments and/or executions of any kind whatsoever which existed at any time prior to the execution of the Agreement.  These General Releases include but not limited to any and all claims relating to Releasor's employment with the Company, and/or the cessation of such employment, and/or any alleged mistreatment of Releasor of any kind and/or relating to any aspect of any relationship or dealing or interaction or communication of any kind involving Releasor or any of the Released Parties.  The scope of what Releasor releases in this Agreement includes, but is not limited to, a full general release by Releasor of any and all claims or potential claims that Releasor may have against the Released Parties, for any and all injunctive relief, declaratory relief, personal injury, and injury of any and all other kinds, and/or any and all other kinds of alleged damages, or other monetary obligation, or obligation of any other sort, including but not limited to, any and all compensatory damages, emotional distress damages, punitive damages, costs, attorneys' fees, and any and all other kinds of damages that are based in whole or in part on any act or omission occurring before this Agreement becomes effective.

(b) Specific Release.  Without limiting the foregoing General Release, Releasor releases Released Parties from all rights and claims under federal, South Carolina, or local statute, regulation, or common law regarding employment, employment discrimination, retaliation, equal opportunity, or wage and hour, including but not limited to, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Civil Rights Acts of 1866 and 1991, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act of 1963, the Fair Labor Standards Act, the Family and Medical Leave Act of 1993, the Occupational Safety and Health Act of 1970, and any claim for breach of any express or implied contract.  Releasor specifically understands that he is releasing claims based on age, race, color, sex, sexual orientation, marital status, religion, national origin, citizenship, veteran status, disability, and other legally protected categories, as well as any compensation-related claims, any tortious act or other civil wrong, and all compensation and benefit claims.

Releasor represents that he has been paid all wages and other compensation due to him as a result of services performed as an alleged employee of the Company. Releasor further represents that he is unaware of any injuries that he had as a result of his alleged employment with the Company.

(c) <u>Claims Released</u>. The Releasor understands and agrees that he is releasing all known and unknown claims, promises, causes of action, or similar rights of any type that he and his heirs, executors, administrators, trustees, legal representatives and assigns may have against the Released Parties, through the date he executes this Agreement.

(d) <u>Waiver</u>. By virtue of the foregoing, the Releasor hereby acknowledges that he cannot benefit monetarily from any claims otherwise released by this Agreement and further agrees that he has waived any right to equitable relief that may have been available to him with respect to any claim or cause of action released herein. Therefore, the Releasor agrees that he will not accept any award or settlement from any source or proceeding (including, but not limited to, any proceeding brought by any other person, entity, or governmental agency) with respect to any claim or right waived or released in this Agreement.

**5.     Confidentiality**.

(a) <u>Non-Disclosure</u>. The Parties and their counsel agree not to disclose or discuss the terms and information contained in this Agreement. If questioned about the status of this matter, the Parties agree only to state that "the matter has been resolved." Nothing herein shall be construed to prevent the Parties from discussing the existence or terms of this Agreement: (1) to their accountants or attorneys, if any, (2) to tax agencies or prospective insurers, (3) to Releasor's spouse, if any, who shall be instructed that the existence and terms of this Agreement are confidential; (4) as required by law; (5) as necessary to enforce this Agreement. Notwithstanding the above, the Parties may disclose the existence and terms of the Agreement to the Court, and via public filing on the Court's ECF system, as may be required by the Court to terminate the lawsuit.

(b) <u>Non-Disparagement</u>. The Releasor further agrees that he will not jointly or individually make any disparaging statements (oral or written) about the Released Parties, their services, reputation, officers, employees or financial status in any of its business relationships. Similarly, the Released Parties, including their officers and directors, agree that they will not disparage the Releasor. However, the Releasor is not precluded from making truthful statements regarding the Released Parties.

(c) <u>Government Investigations</u>. Nothing in this Agreement is intended to prevent a party from initiating or fully cooperating with any government investigation. Notwithstanding anything to the contrary in this Agreement, initiating or cooperating with a government investigation in good faith shall not constitute a violation of any provision of this Agreement.

**6.     Severability**. If at any time, after the date of the execution of this Agreement, any court, agency, or other tribunal finds that any provision or portion of this Agreement is illegal, void, or unenforceable, that provision or portion will no longer have any force or effect.

However, illegality or unenforceability of such provision or portion shall have no effect upon, and shall not impair, the enforceability of the remainder of this Agreement. If a court should determine that any portion of this Agreement is overbroad or unreasonable, the Parties agree that such provision shall be given effect to the maximum extent possible by narrowing or enforcing in part that aspect of the provision found overbroad or unreasonable. If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction, the Releasor agrees that he cannot obtain a personal recovery against the Released Parties, that he will accept any modifications to the language of the Agreement as proposed by Released Parties to ensure the enforceability of a revised Agreement provision, and that he will not be entitled to any payments or benefits other than the payment and benefits contained in this Agreement.

      **7.**    **Interpretation**. Should any provision of this Agreement require interpretation or construction, it is agreed by the Parties that the entity interpreting or construing this Agreement shall not apply a presumption against one Party by reason of the rule of construction that a document is to be construed more strictly against the Party who prepared the document.

      **8.**    **Entire Agreement**. This Agreement constitutes the entire and complete understanding and agreement between the Parties concerning the matters set forth herein, and there are no understandings or agreements, oral or otherwise, that are not reflected herein. This Agreement may not be clarified, modified, changed or amended except in a writing signed by each of the Parties.

      **10.**    **Waiver**. Waiver of any term or condition of this Agreement by any Party shall only be effective if in writing and shall not be construed as a waiver of any subsequent breach or failure of the same term or condition, or a waiver of any other term or condition of this Agreement.

      **11.**    **Governing Law/Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina, without regard to the doctrine of conflicts of law. In the event a dispute arises between the Parties regarding the performance of this Settlement Agreement, they acknowledge that this Agreement was entered into in South Carolina and they consent to the exclusive jurisdiction of the courts, federal or state, of South Carolina and agree not to file an action in any other state.

      **12.**    **Execution in Counterpart**. This Agreement may be executed in counterparts, each of which shall be deemed an original and shall be deemed duly executed upon the signing of the counterparts by the Parties.

      **13.**    **ADEA Acknowledgment**. Releasor understands and agrees that he has not executed this Agreement without first having had the opportunity, whether he takes it or not, to consider this Agreement for a full twenty-one (21) days from receipt. Releasor further understands and agrees that this Agreement will not be effective until seven (7) days after the date the Agreement containing Releasor's signature is returned to counsel for the Released Parties and then only if he has not exercised his right to revoke this Agreement as described in the paragraph below.

Releasor understands and agrees that he:

    a. Has a full twenty-one (21) days within which to consider this Agreement before executing it;
    b. Has carefully read and fully understand all of the provisions of this Agreement;
    c. Is, through this Agreement, releasing the Released Parties from any and all claims he may have against them under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, *et seq.*);
    d. Knowingly and voluntarily agrees to all of the terms set forth in this Agreement;
    e. Knowingly and voluntarily intends to be legally bound by the same;
    f. Was advised and hereby is advised in writing to consider the terms of this Agreement and consult with an attorney of his choice prior to executing this Agreement, and has in fact consulted with attorney Marybeth Mullaney before executing this Agreement;
    g. Has a full seven (7) days following the execution of this Agreement to revoke it; and
    h. Understands that rights or claims under the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621, *et seq.*) that may arise after the date this Agreement is executed are not waived.

This Agreement shall be effective on the 8th day after Releasor executes this Agreement.

**[Signature Pages Following]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement:

_____
Luis Cabrera  (The entire Agreement was read to me in Spanish for my understanding and acknowledgment.)
(*El Acuerdo completo me fue leído en español para mi comprensión y reconocimiento*.)

_____
Date

_____
Brian Lucas

_____
Date

_____
Lucas Designs, Inc.

By (printed name of signatory):_____

_____
Date